**W.A. GRIFFIN, M.D., pro se, Plaintiff,**

v.

**HABITAT FOR HUMANITY INTERNATIONAL, INC.,
Defendant.**

**CIVIL ACTION NO. 1:15–CV–0369–AT**

United States District Court,
N.D. Georgia, Atlanta Division.

Signed 01/15/2016

▇

**1260**

W. A. Griffin, MD, Atlanta, GA, pro se.

Scott Van Wagner, Jr., Tiffany D. Downs, Ford & Harrison LLP, Atlanta, GA, for Defendant.

### *ORDER*

Amy Totenberg, United States District Judge

This matter, one of a series of actions brought by Dr. Griffin,[1] is before the

---

1. All of the cases in this series contain similar allegations against similarly-situated defendants. *See Griffin v. Blue Cross and Blue Shield Healthcare Plan of Ga., Inc., et al.,* No. 1:14–cv–1610–AT (N.D. Ga. filed May 28, 2014); *Griffin v. Southern Company Servs., Inc.,* No. 1:15–cv–0115–AT (N.D.Ga. filed Jan. 14, 2015), *aff'd,* No. 15–12135, 635 Fed.Appx. 789 (11th Cir. Dec. 30, 2015) (per curiam); *Griffin v. SunTrust Bank, Inc.,* No. 1:15–cv–0147–AT (N.D.Ga. filed Jan. 16, 2015); *Griffin v. FOCUS·Brands Inc.,* No. 1:15–cv–0170–AT (N.D. Ga. filed Jan. 20, 2015), *aff'd,* No. 15–12137, 635 Fed.Appx. 796 (11th Cir. Dec. 30, 2015) (per curiam); *Griffin v. Health Sys. Mgmt., Inc.,* No. 1:15–cv–0171–AT (N.D. Ga. filed Jan. 20, 2015), *aff'd,* No. 15–12138, 635 Fed.Appx. 768 (11th Cir. Dec. 29, 2015) (per curiam); *Griffin v. Lockheed Martin Corp.,* No. 1:15–cv–0267–AT (N.D.Ga. filed Jan. 28, 2015); *Griffin v. Gen. Mills, Inc.,* No. 1:15–cv–0268–AT (N.D.Ga. filed Jan. 28, 2015), *aff'd,* No. 15–12157, 634 Fed.Appx. 281 (11th Cir. Dec. 29, 2015) (per curiam); *Griffin v. Oldcastle, Inc.,* No 1:15–cv–0269–AT (N.D. Ga. filed Jan 28, 2015); *Griffin v. Habitat for*

Court on Defendant Habitat for Humanity, Inc.'s ("Habitat") Motion for Attorney's Fees and Costs [Doc. 22]. The Motion seeks fees and costs of $18,770.00 and is made pursuant to 29 U.S.C. § 1132(g) and the Eleventh Circuit's five-factor test under that statutory provision. No response was filed, indicating "there is no opposition to the motion." LR 7.1B, NDGa. However, for the following reasons, the Motion is **DENIED.**

## I. RELEVANT BACKGROUND

In this lawsuit brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. ch. 18, Plaintiff sought $927.60 in unpaid medical bills and $64,900.00 in statutory penalties. (Compl. at 15.) She did so by filing a four-count Complaint. Count One alleged failure to pay the correct amount of benefits. Count Two alleged a breach of fiduciary duty by continuing to delegate claims administration duties to Habitat's claims administrator, Blue Cross Blue Shield Healthcare Plan of Georgia ("BCBSHP Georgia"), even when Habitat knew or should have known that BCBSHP Georgia was performing inadequately. Count Three, the count upon which Plaintiff's prayer for statutory penalties was based, alleged failure to provide plan documents upon request. And Count Four claimed Habitat breached its "contractual obligations to the Plaintiff as recognized by ERISA" that Plaintiff be provided a full and fair appeal review. (Id. at 11–15.)

On March 17, 2015, Defendant moved to dismiss the Complaint in its entirety. (Doc. 8.) Plaintiff responded and Defendant replied. (Docs. 10, 11.) Plaintiff then moved to amend her Complaint on

April 20, 2015, and Defendant responded. (Docs.12, 15.) On July 29, 2015, the Court dismissed Plaintiff's Complaint and denied her motion to amend. (Doc. 16.) The case is currently on appeal to the Eleventh Circuit. (Doc. 18.)

As noted above, Dr. Griffin has filed a number of other cases raising similar claims against similarly-situated corporate defendants. All of the cases were based upon the same form assignment of benefits that Dr. Griffin has her patients execute as a condition of service, and all of the statutory penalties requests flowed from the same violation: failure to produce the plan documentation upon request. On March 12, 2015, this Court held in one of the other cases that Dr. Griffin was not entitled to statutory penalties because she requested the plan documentation from the wrong party (the claims administrator rather than the plan administrator). *See Griffin v. Blue Cross and Blue Shield Healthcare Plan of Ga., Inc., et al.,* No. 1:14–cv–1610–AT, 157 F.Supp.3d 1255, 1258–59, Doc. 26 at 6–8, 2015 WL 9942603 (N.D.Ga. filed March 12, 2015) (hereinafter, "BCBSHP GA"). That issue was decided in BCBSHP Ga almost a week before Defendant filed its motion to dismiss, and Defendant referenced that holding in its motion.

In another Dr. Griffin case, defendant Southern Company Services, Inc. moved to dismiss Plaintiff's complaint because the ERISA plan contained a valid anti-assignment clause. Southern Company argued that the clause invalidated Plaintiff's purported assignment from her patient and thereby eliminated her "statutory standing" to bring ERISA claims on behalf of

*Human. Int'l, Inc.,* No. 1:15–cv–0369–AT(N.D.Ga. filed Feb. 6, 2015); *Griffin v. Verizon Comm., Inc.,* No. 1:15–cv–0569–AT (N.D.Ga. filed Feb. 26, 2015), *aff'd,* No. 15–13525, 641 Fed.Appx. 869 (11th Cir. Jan. 12,

2016) (per curiam); *Griffin v. Humana Employers Health Plan of Ga., Inc.,* No. 1:15–cv–0569–AT (N.D.Ga. filed Feb. 26, 2015); *Griffin v. Aetna Health Inc. et al.,* No. 1:15–cv–3750–AT (N.D. Ga. filed Oct. 26, 2015).

that patient. Defendant's Motion to Dismiss (Doc. 5–1) at 6–8, *Griffin v. Southern Company Servs., Inc.*, No. 1:15–cv–0115–AT (N.D. Ga. filed Jan. 14, 2015). Southern Company's motion to dismiss was filed on February 4, 2015, *id.*, over one month before Habitat moved to dismiss this case, partially on the same ground.

In making that argument in its motion to dismiss in this case, whole portions of Southern Company's argument appear to have been lifted directly from its motion. For example, both motions contain the following quotes (demarcated by double-quotation marks):

- "A [ ] provider-assignee *cannot sue* under ERISA where the terms of the plan prohibit assignment. *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294 (11th Cir. 2004)."

- " '[A]n unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable.' *Id.* at 1296."

- "In *Physicians Multispecialty Grp.*, the plaintiff was a medical group that obtained a written assignment of benefits from an ERISA plan beneficiary."

- Plaintiff "sued to recover to recover the cost of medical services it rendered to the beneficiary."

- "Recognizing ERISA [was] silent on whether a beneficiary [could] assign his or her welfare benefits, the court concluded the matter of assignability [was] based on the agreement between the contracting parties. *Id.* at 1296."

- "The court [ruled that] '[t]he Plan provision [ ] clearly provides that a participant or beneficiary [could] not assign benefits;' thus, the plaintiff could not maintain its ERISA action. *Id.*"

(1:15–cv–0115–AT, Doc. 5–1 at 6–7; 1:15–cv–0369–AT, Doc. 8–3 at 13–14.) This anti-assignment argument carried the day in that case and in this—and in almost all of Dr. Griffin's 10 other cases before the undersigned as well.

The Court recently had occasion to deal with a fees motion in the only other case in which one was filed. There, the Court noted that the defendant attempted to settle the case twice, the second time even offering to pay Plaintiff's filing fees. *See Griffin v. Gen. Mills, Inc.*, No. 1:15–cv–0268–AT, 157 F.Supp.3d 1350, 2016 WL 354431 (N.D.Ga.2016). Here, Defendant indicates that Dr. Griffin attempted to settle the case twice. (Doc. 22–1 at 5.) In response to one offer, Habitat "declined." (*Id.*) In response to the other, Habitat "promptly declined." (*Id.*)

## II. ENTITLEMENT TO FEES

Defendants seek attorney's fees only under ERISA's fee-shifting provision. Pursuant to that provision, a district court, "in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C. § 1132(g)(1) (2012), if that party achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). This standard requires more than "trivial success on the merits" or a "purely procedural victory." *Id.*

Once it is established that a party had "some degree" of success, the Eleventh Circuit "require[s] district courts to consider five factors when deciding whether to award fees to a prevailing party:

(1) the degree of the opposing parties' culpability or bad faith;

(2) the ability of the opposing parties to satisfy an award of attorney's fees;

(3) whether an award of attorney's fees against the opposing parties would deter

other persons acting under similar circumstances;

(4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and] (5) the relative merits of the parties' positions."

*AirTran Airways, Inc. v. Elem,* 767 F.3d 1192, 1201 (11th Cir.2014) (quoting *Freeman v. Continental Ins. Co.,* 996 F.2d 1116, 1119 (11th Cir.1993)). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address." *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980).[2]

While no factor is decisive and some may not be apropos, there may be other factors that a Court should consider in a particular case. As explained by the current Fifth Circuit,

> *Bowen* makes clear that ... the list of five factors to be considered in an

ERISA § 502(g) attorneys' fees case is a non-exhaustive, *ejusdem* generis list ("[A] court should consider such factors as the following [five factors].... [I]n any individual case, however, other *considerations may be relevant as well.*"). *Riley v. Adm'r of Supersaver 401K Capital Accumulation Plan for Employees of Participating AMR Corp. Subsidiaries,* 209 F.3d 780, 782 (5th Cir.2000) (emphasis in original) (footnote omitted).

To start, "[t]here is no doubt that the Defendant achieved 'some degree of success on the merits' as this Court [dismissed all of] Plaintiff's claims." *DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' Dist. Council of Chicago & Vicinity,* No. 09 CV 0039, 2011 WL 1131110, at *1 (N.D.Ill. Mar. 28, 2011) (holding defendant achieved some success on the merits after dismissing plaintiff's claims based in part on lack of a valid assignment); *see also Feinstein v. Saint Luke's Hosp.,* No. CIV.A. 10–4050, 2012 WL 4364641 at *1 (E.D.Pa. Sept. 25, 2012) (holding some success on the merits after granting defendant's motion to dismiss).[3]

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981. To the extent Plaintiff might have argued that a heightened standard should be applied to a Defendant seeking fees against an ERISA plaintiff, the Former Fifth Circuit declined to apply the *Christianburg Garment* distinction between prevailing plaintiffs and defendants to claims for attorney's fees under ERISA. *Bowen,* 624 F.2d at 1266 n. 24 (5th Cir.1980) (discussing *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)).

**3.** With regard to whether Defendant's success was "on the merits," this Court initially dismissed Plaintiff's claims without prejudice for lack of statutory standing. However, the Eleventh Circuit clarified in a related case that the question statutory standing really po-

ses is "whether the plaintiff 'has a cause of action under the statute.'" *Griffin Gen. Mills, Inc.,* No. 15–12157, 634 Fed.Appx. 281, 2015 WL 9466979 at *5 (11th Cir. Dec. 29, 2015) (per curiam) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* —— U.S. ——, 134 S.Ct. 1377, 1387–88 & n. 4, 188 L.Ed.2d 392 (2014) (internal quotation marks omitted). The Eleventh Circuit then construed—and affirmed—this Court's decision in that case as "a determination that [Dr. Griffin] failed to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Id.* at 284, 2015 WL 9466979 at *2. The Court's dismissal of this case was based on the same theory and precedent, so it also should have been a dismissal for failure to state a claim pursuant to Rule 12(b)(6). "The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (quotation and citation omitted).

Hardt having been satisfied, Defendant argues that the five factors favor an award of fees. Based on the specific facts of this case, the Court disagrees.

 The first factor—culpability or bad faith—is neutral. Defendant argues that the first factor weighs in its favor because Plaintiff "engaged in litigation without submitting substantive legal arguments demonstrating she was entitled to relief," and because Plaintiff essentially continued to make absurd settlement offers after the writing on the walls indicated she would not prevail in the case. (Doc. 22–1 at 8–9.) However, the fact that Plaintiff, proceeding *pro se* in this matter, continued to demand some portion of statutory penalties in her settlement negotiations after the Court had ruled against her on that issue in a related case was likely based on her confidence that she would succeed on appeal. In that sense, Plaintiff's position was likely more akin to hope than to culpability or bad faith. The Court does not "expect a lay person to appreciate the difference between a federal statutory violation and plaintiff's perception of unfair treatment," particularly in such a complex area of the law. *Baker v. Greater Kansas City Laborers Welfare Fund,* 716 F.Supp. 1229, 1230 (W.D.Mo.1989). . . .

At heart, this is a tale about what can go sadly wrong when a competent individual seeks to pursue a case *pro se* in a complex area of the law. Dr. Griffin believed she was underpaid by $927.60 for medical services administered to the beneficiary of a Habitat for Humanity employee benefit plan. That plan happened to be governed by ERISA, a notoriously labyrinthine piece of legislation, yet Plaintiff decided to go it alone. Misguided, perhaps, but there is no evidence of bad faith here. Certainly

no more than, say, asking a claims administrator for the name of the plan administrator and the plan documents and receiving radio silence in response.

Moving on to the second factor—ability to pay—the Court finds this factor neutral as well. The Court assumes that, as a practicing dermatologist, Plaintiff would be able to satisfy at least some minor portion of the fees awarded, though perhaps not the full $18,770.00 sought. Nonetheless, Plaintiff has not submitted any evidence that she would be unable to pay an award, so this factor does not counsel against an award.

The third factor—deterring others—is neutral to the extent that it is relevant. To start, deterrence is more obviously relevant when a plaintiff seeks fees after a defendant is found to have violated ERISA. *See, e.g., AirTran Airways,* 767 F.3d at 1202. Defendant argues this factor is relevant and weighs in favor of an award of fees because it "would deter similar plaintiffs from pursuing unsupported litigation, unless those plaintiffs could also provide legal support for their claims." (Doc. 22–1 at 11.) However, Defendant misses the point that Dr. Griffin had no idea if her litigation was unsupported until she filed this lawsuit. In fact, the record indicates that she tried to request the plan documents from the plan administrator, but was never given the plan documents so she could figure out who the plan administrator was—or if the plan contained an anti-assignment provision.[4] Perhaps the documents would have showed that she had a valid assignment and that she requested the documents from the right entity. In that case, she may have been able to provide some legal support for her claims. Accordingly, the Court finds it

4. To be fair, Dr. Griffin's document requests, which accompanied her level 1 and level 2 denial of benefits appeals in each case, were long and convoluted patchworks of protests, threats, how-to guides, citations to agency regulations and guidelines, and quotes from court opinions. (*See, e.g.,* Doc. 1 at 20–41.)

hard to imagine what deterrent value awarding fees would have in this case.

The fourth factor – whether Defendant, in the lawsuit, sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself—is also neutral to the extent it is relevant. This factor appears to be most relevant in situations where the plaintiff sues to recover assets purloined from the plan. *See, e.g., AirTran Airways,* 767 F.3d at 1202. Defendant argues that, as a non-profit organization with a self-insured ERISA plan for its employees, "[t]he more resources Defendant must expend on unsupported claims leaves fewer resources for Defendant to use to provide benefits under the Plan." (Doc. 22–1 at 12.) While that argument has some superficial appeal, it is unclear how Habitat paying $18,770.00 in this lawsuit would affect whether it paid for benefits for its employees. It is very clear, on the other hand, that "Plaintiffs will have added incentive to bring suits that benefit all plan beneficiaries and to enforce the policies behind ERISA if their attorneys' fees will be paid by defendants." *Marquardt v. N. Am. Car Corp.,* 652 F.2d 715, 721 (7th Cir.1981). For this reason, "in general, the fourth factor is significant in determining the benefits conferred in a suit brought by ERISA plaintiffs, rather than the benefits of dismissing a meritless ERISA suit." *Id.*

The final factor—the relative merits of the parties' positions—weighs in favor of granting fees. Defendant's position as to the enforceability of an anti-assignment clause in an ERISA plan document has been the settled law in the Eleventh Circuit since 2004. *See Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.,* 371 F.3d 1291, 1294–96 (11th Cir.2004). And Defendant's position on Plaintiff's entitlement to statutory penalties based her requesting documents from

the wrong entity has been the settled law in the Eleventh Circuit since at least 2008. *See Byars v. Coca–Cola Co.,* 517 F.3d 1256, 1270–71 (11th Cir.2008).

Another relevant factor here, though, in considering whether to award attorney's fees, is the degree to which Defendant attempted to resolve the litigation at the earliest possible stage. After all, the earlier the settlement, the fewer the fees. And at very minimum, Dr. Griffin appears never to have been paid $962.00 for her medical services provided to a beneficiary of Habitat. Unlike in *General Mills,* where the defendant attempted to settle the case twice and even pay back Dr. Griffin's filing fees, it does not appear that Habitat attempted to settle this case at all. Indeed, it "promptly declined" Plaintiff's first settlement offer, which the Court interprets as a refusal to make a counteroffer.

Habitat may have considered Plaintiff's settlement offers outlandish, but Habitat provides no evidence that it itself *made* any *reasonable* offers. Instead, it proceeded to bill its client, a non-profit organization, for over 70 hours of work done on this case. The itemized fee submission reflects no apparent effort to use billing judgment and no apparent effort to minimize time spent on what could have been incorporated by reference rather than cut-and-pasting arguments and billing for lengthy assessment of the case and the Complaint.

A prevailing defendant in an ERISA case is not automatically awarded attorney's fees. *See, e.g., First Nat. Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.,* 960 F.2d 1546, 1553–54 (11th Cir.1992) (affirming denial of prevailing defendant's motion for attorney's fees); *Slaughter v. Sheet Metal Workers' Local No. 85 Pension Plan,* No. 1:03–CV–3410–WSD, 2006 WL 1734254, at *9 n. 9 (N.D.Ga. June 23, 2006) (denying prevailing defendant's motion for attorney's fees). After a thoroughly re-

viewing the record in this case and balancing all of the above factors, the Court finds that an award of fees pursuant to 29 U.S.C. § 1132(g)(1) is inappropriate based on the specific facts of this case.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Attorney's Fees and Costs [Doc. 22] is **DENIED.**

**IT IS SO ORDERED** this 15th day of January, 2016.