**W.A. GRIFFIN, MD, pro se, Plaintiff,**

v.

**HEALTH SYSTEMS MANAGEMENT, INC., Defendant.**

**CIVIL ACTION NO. 1:15–CV–00171–AT**

United States District Court,
N.D. Georgia, Atlanta Division.

Signed May 12, 2015

the above reasons, this amendment would be futile. Plaintiff's Motion to Amend [Doc. 11] is DENIED.

W. A. Griffin, MD, Atlanta, GA, pro se.

R. Carl Cannon, Constangy Brooks & Smith, Atlanta, GA, for Defendant.

## AMENDED [1] ORDER

Amy Totenberg, United States District Judge

This matter is before the Court on Defendant Health Systems Management, Inc.'s ("HSM") Motion to Dismiss [Doc. 5]. For the following reasons, the Motion is **GRANTED**.

## I. BACKGROUND FACTS

At this stage, the facts alleged in the Complaint are accepted as true. Plaintiff Griffin operates a solo dermatology practice called Intown Dermatology. (Compl. ¶ 3.) As a condition of service, Plaintiff requires her patients to assign their health insurance benefits to her. (*Id.*)

In April and May of 2013, Plaintiff performed two surgical procedures on patient MG, whose insurance coverage is at issue in this litigation. MG is a beneficiary of an HSM-sponsored self-funded group health benefit plan (the "Plan") governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. ch. 18. (*Id.* ¶¶ 4, 12; Doc. 5–2 at 3 [2]). Plaintiff was

---

1. This Amended Order amends the Order filed on May 8, 2015 [Doc. 16] to correct an oversight in the original Order's discussion. Plaintiff's more complete legal presentation in her brief in *Griffin v. General Mills, Inc.*, No., Doc. 6 (N.D. Ga. Feb. 20, 2015) was helpful to the Court in clarifying the posture of the case. In particular, the last paragraph on page seven has been added, as have footnotes 3 and 4. In all other respects, the Court's Order of May 8, 2015 is unchanged. Pursuant to Federal Rule of Civil Procedure 60(a), the Court may correct "a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice."

2. The Court considers the plan documentation attached to Defendant's Motion to Dismiss because the document is referred to in the Complaint and is central to Plaintiff's claims. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th

not paid what she believes she is owed for services rendered to MG.

Plaintiff's Complaint contains four counts against HSM, all of which are styled as ERISA violations. Count One alleges failure to pay the correct amount of benefits. Count Two alleges a breach of fiduciary duty by continuing to delegate claims administration duties to HSM's claims administrator, Blue Cross Blue Shield Healthcare Plan of Georgia ("BCBSHP Georgia"), even when HSM knew or should have known that BCBSHP Georgia was performing inadequately. Count Three alleges failure to provide plan documents upon request, and Count Four claims HSM breached its "contractual obligations to the Plaintiff as recognized by ERISA."

## II. LEGAL STANDARD

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed.2002); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. See Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir.1993). Plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

## III. DISCUSSION

Defendant HSM moves to dismiss all ERISA-based violations under Rule 12(b)(6). HSM argues that Plaintiff lacks standing to bring any ERISA-based claim against it because the Plan at issue contains an unambiguous anti-assignment clause. Plaintiff responds that the assignment that grants her standing to bring her ERISA claims should be permitted because Georgia insurance law allows for such assignments.

### A. Count 1: Unpaid Benefits Under 29 U.S.C. § 1132(a)(1)(B)

The Eleventh Circuit has long since resolved any question about the effectiveness of an anti-assignment clause as it pertains to an ERISA claim for unpaid benefits. Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc., 371 F.3d 1291, 1294–1296 (11th Cir.2004). In Physicians Multispecialty Group, a healthcare provider obtained an assignment of benefits from the estate of a deceased participant in an ERISA-governed plan. Id. at 1293. When the plan did not pay as much as the provider believed it was owed for services rendered to the deceased, the provider sued for unpaid

Cir.1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attach-

ing such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." (citing Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993)).

benefits under 29 U.S.C. § 1132(a)(1)(B)— the same provision under which Plaintiff Griffin brings Count 1 of her Complaint. The assignment issue was not fully briefed or decided by the district court, and summary judgment was granted in favor of the provider. *Id.*

The Court of Appeals reversed. After the issue *was* fully briefed, the Eleventh Circuit held that an ERISA-governed healthcare plan may prohibit the assignment of benefits to a third-party, including to a healthcare provider. Specifically, the court stated:

> Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), two categories of persons exist who can sue for benefits under an ERISA-governed plan: plan beneficiaries and plan participants. Healthcare providers ... are generally not "participants" or "beneficiaries" under ERISA and thus lack independent standing to sue under ERISA. Healthcare providers may acquire derivative standing, however, by obtaining a written assignment from a "beneficiary" or "participant" of his right to payment of benefits under an ERISA-governed plan..
>
> . . .
>
> [But because] ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan–like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable.

*Id.* at 1294–1296 (citations omitted).

The anti-assignment clause considered in *Physicians Multispecialty Group* was found to be unambiguous. It read:

> Except as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by ... assignment ... of any kind[ ]. Any attempt to ... assign ... any such amount, whether presently or hereafter payable, shall be void....

*Id.* at 1295. As the clause was unambiguous, it precluded the healthcare provider's "maintenance of an ERISA action." *Id.* at 1296. *See also Ward v. Ret. Bd. of Bert Bell/Pete Rozelle NFL Player Ret. Plan,* 643 F.3d 1331, 1333–34 (11th Cir.2011) (holding same and citing *Physicians Multispecialty Group*).

 The anti-assignment clause at issue here is similarly unambiguous. It reads:

> You cannot assign your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support Order" as defined by ERISA or any applicable state law.

(Doc. 5–2 at 65.)

The provision's terms are clear: participants in and beneficiaries of Defendant HSM's ERISA-governed health benefit plan cannot assign their right to receive payment absent certain conditions. Under *Physicians Multispecialty Group,* this unambiguous anti-assignment clause is valid and enforceable.

The "assignment of benefits" Plaintiff received from MG reads as follows:

> I ... hereby assign and convey directly to [W.A. Griffin, M.D./Intown Dermatology], as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement.

(Doc. 1–1 at 7.) The assignment conveys only "medical benefits and/or insurance reimbursement." But that is exactly what is prohibited by the anti-assignment clause: the "right to receive payment." Under *Physicians Multispecialty Group,* the anti-assignment clause precludes Plaintiff's "maintenance of an ERISA action" based on this impermissible assignment. *Physicians Multispecialty Group,* 371 F.3d at 1296.

Unless, as the contract states, the assignment is "required by ... any applicable state law." Plaintiff contends that O.C.G.A. § 33–24–54 requires the recognition of assignments of benefits in insurance contracts. Section 33–24–54 states:

[W]henever an accident and sickness insurance policy, subscriber contract, or self-insured health benefit plan, ... provides that any of its benefits are payable to a participating or preferred provider of health care services ... the person licensed under this title shall be required to pay such benefits either directly to any similarly licensed nonparticipating or nonpreferred provider who has rendered such services, has a written assignment of benefits, and has caused written notice of such assignment to be given to the person licensed under this title or jointly to such nonparticipating or nonpreferred provider and to the insured, subscriber, or other covered person.

O.C.G.A. § 33–24–54. "The starting point for all statutory interpretation is the language of the statute itself." *United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir.1999) (citing *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981)). The plain language of the provision makes clear that all it requires is that an insurer pay benefits directly to an out-of-network healthcare provider, or jointly to the provider and the insured, when that provider: (1) renders covered services; (2) has a written assignment of benefits; and (3) gives appropriate notice. The plain language says nothing about requiring an assignment, nor about requiring that an insurer (or a court) recognize an assignment.

Even if O.C.G.A. § 33–24–54 could be read to mandate the recognition of assignments, *Physicians Multispecialty Group* implicitly recognized ERISA preemption of any such state law. *Physicians Multispecialty Group,* 371 F.3d at 1295 ("Consid-

ering this issue, we are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision.") (citing *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.,* 49 F.3d 1460, 1464–65 (10th Cir.1995) ("We conclude that ERISA preempts state law on the issue of the assignability of benefits because material provisions in the employee benefits plans covered by ERISA would be directly affected if Kansas law were to be interpreted as prohibiting restrictions on assignment."); *Davidowitz v. Delta Dental Plan of California, Inc.,* 946 F.2d 1476, 1480–81 (9th Cir.1991) (holding Congressional intent "to allow the free marketplace to work out such competitive, cost effective, medical expense reducing structures as might evolve" militated against requiring ERISA plans to recognize assignments); *Neurological Res., P.C. v. Anthem Ins. Companies,* 61 F.Supp.2d 840, 845–46 (S.D.Ind.1999) (granting summary judgment for defendant insurance companies on ERISA claims based on plans containing anti-assignment clauses because " 'ERISA instructs courts to enforce strictly the terms of plans, *see* 29 U.S.C. § 1104(a)(1)(D) and *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.,* 870 F.2d 1148 (7th Cir.1989) (en banc), [and therefore] an assignee cannot collect unless he establishes that the assignment comports with the plan.' *Kennedy v. Connecticut General Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991).")); *but see Louisiana Health Serv. & Indem. Co. v. Rapides Healthcare Sys.,* 461 F.3d 529, 540 (5th Cir.2006) (taking a contrary view of the congressional silence on assignment of benefits in ERISA and stating, "congressional silence points in both directions: either leaving assignment of employee welfare benefits to the parties or leaving room

for state regulation, should a state desire to intervene.").

Accordingly, as the Plan prohibits the assignment of benefits except in circumstances not present here, Plaintiff's assignment is invalid and Count 1 is **DISMISSED WITHOUT PREJUDICE** for lack of standing.

## B. Counts 2, 3, and 4

■ Counts 2, 3, and 4 also must be dismissed. The most obvious reason is that Plaintiff's only justification for her assertion of standing as to these counts—namely, the assignment—has been invalidated. Plaintiff has not offered and the Court cannot imagine any basis for standing other than the now invalid assignment.

■ Second, even if the assignment were valid, the plain language of the assignment only assigns to Plaintiff the right to receive "benefits." In the Eleventh Circuit, "[a]ssignment agreements are generally interpreted narrowly." *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 Fed. Appx. 846, 851 (11th Cir.2013) *cert. denied sub nom. Sanctuary Surgical Ctr., Inc. v. Aetna Health, Inc.,* —— U.S. ——, 134 S.Ct. 1557, 188 L.Ed.2d 559 (2014). And under a narrow reading, the assignment of mere "benefits" under the Plan would not provide Plaintiff with the right to bring claims for breach of fiduciary duty against

the Plan—or any other claim for civil penalties under ERISA. Put another way, "[Plaintiff's] contention stretches beyond its breaking point the plain meaning of the agreement, which assigns only the right to receive benefits and not the right to assert claims for breach of fiduciary duty or civil penalties. Because the agreements do not support [Plaintiff's] position, [she] lack[s] standing to bring claims under § 502(a)(3) and § 502(c)," as codified at 29 U.S.C. §§ 1132(a)(3) and 1132(c). *Id.* at 852. As a result, Defendant's Motion to Dismiss is **GRANTED** as to Counts 2, 3, and 4 as well.[3][4] Like Count 1, these counts are **DISMISSED WITHOUT PREJUDICE** for lack of standing.[5]

Practically speaking, does Plaintiff have any hope of being paid what she is owed for her services? The answer is yes. "If provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid." *Cagle v. Bruner,* 112 F.3d 1510, 1515 (11th Cir.1997). Plaintiff herself knew of the more traditional "bill your patients" avenue and even required MG to represent that he or she knew of this avenue, too. On Plaintiff's "Legal Assignment of Benefits" document, patients are required to

---

3. For reasons that are obvious from the Complaint, the Court construed Plaintiff's breach of contract claim as an ERISA claim and found Plaintiff did not have standing to bring that claim. Nothing in the Order should be interpreted to preclude Plaintiff from attempting to bring purely state law claims against any liable entity. *See In re Managed Care Litig.,* 298 F.Supp.2d 1259, 1293 (S.D.Fla. 2003) (discussing at length ERISA preemption differences between the state law claims of Assignee Non–Participating Providers and Non–Participating, Non–Assignee Providers and finding that the latter are not necessarily preempted) (citing *Lordmann v. Equicor,* 32 F.3d 1529 (11th Cir.1994)).

4. Even if Plaintiff could proceed on one or more of these ERISA claims, she would lack standing to seek civil penalties and would be limited to seeking recovery of unpaid benefits. *Sanctuary Surgical Center,* 546 Fed.Appx. at 851–52.

5. Plaintiff also has moved for leave to amend her complaint to add one additional ERISA claim for breach of a co-fiduciary under 29 U.S.C. § 1105. (Doc. 14–1 at 17.) For the above reasons, this amendment would be futile. Plaintiff's Motion to Amend [Doc. 14] is **DENIED.**

**1288**

tick boxes next to the following two statements:

- I understand that I am financially responsible for all charges whether or not paid by insurance.
- I understand and agree that I am responsible for full payment of the medical debt if my insurance company has refused to pay 100% of my benefits based on billed charges, within ninety (90) days of any and all appeals or request [*sic*] for information.

(Doc. 1–1 at 7.) Nothing in this Order prevents Plaintiff from recovering from MG, the recipient of her surgical interventions.

## IV. CONCLUSION

All of the claims in the Complaint are ERISA claims. As Defendant's Plan contains an unambiguous anti-assignment clause, Plaintiff lacks standing to bring any of them. Defendant's Motion to Dismiss all claims in the Complaint [Doc. 5] is therefore **GRANTED,** and Plaintiff's motion for leave to amend the Complaint to add another ERISA claim [Doc. 14] is **DENIED.** All claims are **DISMISSED WITHOUT PREJUDICE** for lack of standing. The Clerk is **DIRECTED** to close the case.

Pursuant to Federal Rule of Civil Procedure 60(a), the judgment of May 8, 2015 [Doc. 17] shall be **CORRECTED** to state that the judgment is based upon the instant order.

**IT IS SO ORDERED** this 12th day of May, 2015.